IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN KIMBROUGH, : CIVIL NO. 3:CV-12-0831
:
    Petitioner :
: (Judge Munley)
v. :
: FILED
: SCRANTON
JEFF BUTLER, WARDEN MONICA :
RECTENWALD, : OCT 2 2 2013
:
    Respondents :

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, John Kimbrough ("petitioner"), an inmate incarcerated at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania. He contends that respondent violated his due process rights in the context of a disciplinary hearing. (Doc. 1, at 3.) The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.    **Background**

On August 16, 2011, petitioner was charged with a violation of Code 104, possession, manufacture, or introduction of a weapon. The incident report, which was authored by John Yearick, Teacher, described the incident as follows: "On August 16, 2011, while conducting a search of six man cell 954-956 in unit 2-A, I discovered a sharpened toothbrush hidden under the sink, in the common area of the cell. The toothbrush was sharpened to a point and had a handle made of stpe [sic] and white string. The weapon was approximately 7 ½ inches long. The cell is occupied by inmates Brown, Walter #17172-171, Rodriguez, Antonio

#24180-359, Brown, Shamaree #13632-171, Kimbrough, John #03937-070, Campos, Rafael #74761-079 and Ramirez, Alejandro #24095-279." (Doc. 7-1, at 17.)

At the Unit Disciplinary Committee review, which took place on September 1, 2011, petitioner stated that the weapon was not his. (Doc. 7-1, at 17.) The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") based on the severity of the charge. (Id.) After being advised of the rights associated with the process, petitioner signed the Inmate Rights at Discipline Hearing form. (Doc. 7-1, at 21.) He chose not to have a staff representative and declined to call witnesses. (Id. at 22.)

The hearing commenced on September 14, 2011. (Doc. 7-1, at 24.) Petitioner stated "The weapon is not mine." (Id.) Documentary evidence submitted included the incident report and a photograph taken by Lt. Barden dated 8/16/11, which clearly depicted the weapon as described in the incident report. (Id. at 25)

The DHO found based on the evidence that petitioner committed the act as charged. (Doc. 7-1, at 24.) In arriving at this conclusion, he stated the following:

> The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report. Inmates are responsible for items located in a shared, common area of the cell. The homemade weapon was hidden and located in the cell's sink. No inmate assigned to the cell claimed responsibility for the weapon throughout the disciplinary process which places equal responsibility with all inmates assigned to the cell. The DHO finds the charge for code 104 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(Doc. 7-1, at 25.)

2

In sanctioning him with sixty days of disciplinary segregation, disallowance of thirty days of good conduct time, forfeiture of 100 days of non vested good conduct time, six months loss of telephone and visiting privileges, and a monetary fine of $67.00, the DHO reasoned as follows: "Kimbrough's possession of a weapon threatened the safety of both staff and inmates. Weapons in a correctional institution are solely possessed for th future infliction of serious bodily harm. This threatens not only the intended victim of weapon assaults, but others in the area and staff responding to incidents. Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanction to punish Kimbrough for his behavior, while the Loss of Privileges (Phone and Visit) and a Monetary Fine is sanction in an effort to deter him from this type of behavior in the future." (Doc. 7-1, at 25.)

After exhausting all available administrative avenues of review, petitioner filed the instant petition arguing that "the FBOP/DHO abuse[d] its discretion by charging the Petitioner with Code 104, Reasoned by P.S. 5270.09 when it is in violation of P.S. 1060.11 Rated Capacities of the Bureau Facilities." (Doc. 1, at 3.) He argues that "the use of Program Statement 5270.09 does not apply in this case, due to the facility in which he was housed is an open dormitory, in which partitions, (walls and doors) that separate double occupancy from the rest of the unit area of less than 120 square feet, as stipulate, and multiple occupancy area, in this case illegal Six-Man-cell (dormitory) of less than 120 square feet are in direct violation of Program Statement 1010.11, Rated Capacities for Bureau

3

Facilities." (Id.) It is his position that he cannot be held responsible for contraband found in a common area of such a dormitory setting.[1] (Id. at 4.)

II. **Discussion**

Petitioner's claim that his due process rights were violated in the context of the disciplinary hearing process, and that this violation resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of petitioner's confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of

---

[1]Inasmuch as petitioner attempts to challenge the dormitory housing arrangement, and any regulations that may be violated as a result of such a configuration, such a claim will not be considered in the context of a habeas corpus petition. (Doc. 1, at 3-4; Doc. 8, at 2.) A habeas petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement. Preiser v. Rodriguez, 411 U.S. 45, 494 (1973); Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993). "Habeas relief is clearly quite limited: 'The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.'" Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002) (quoting *Powers of Congress and the Court Regarding the Availability and Scope of Review*, 114 Harv.L.Rev. 1551, 1553 (2001)). When seeking to impose liability due to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, the appropriate remedy is a civil rights action. See Leamer, 288 F.3d at 540. "Habeas corpus is not an appropriate or available federal remedy." See Linnen v. Armainis, 991 F.2d 1102, 1109 (3d Cir. 1993).

Federal Regulations, Title 28, Sections 541through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5.

Following the investigation, the matter is then referred to the UDC for review pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. (Id.) If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the Greatest or High severity category, the UDC refers the matter to a DHO for a hearing. (Id.) In the instant matter, the UDC recommended that further review of the incident be referred to the DHO based on the severity of the charge. (Doc. 7-1, at 17.)

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-572 (1974). Petitioner does not dispute that he received these

5

due process protections.

Rather, he challenges the sufficiency of the evidence against him. Where the due process requirements of Wolff are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In arguing that he cannot be held responsible for contraband found in a common area of a dormitory, petitioner is essentially challenging the DHO's reliance on the constructive possession doctrine as evidence of his guilt. (Doc. 1, at 4.) "In the absence of direct evidence indicating an inmate's guilt of possession, the "some evidence" standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged. See White v.

6

Kane, 860 F. Supp. 1075, 1079 n. 5 (E.D.Pa. 1994), *aff'd*, 52 F.3d 319 (3d Cir. 1995)." Solomon v. Warden, FCI Fairton, 506 F. App'x 147, 149 (3d Cir. 2012). Courts consistently have upheld the rule that inmates can be held to be in "constructive possession" of contraband found in their cells, even where many prisoners had access to those cells. See, e.g., White v. Kane, 860 F. Supp. 1075, 1079 (E.D.Pa. 1994) (plaintiff's cell was unlocked while he was out at his work assignment; thus, every prisoner on plaintiff's cell block theoretically had access to plaintiff's cell). See also Flowers v. Anderson, 661 F.3d 977, 980–81 (8th Cir. 2011) (finding all inmates are "collectively responsible" for contraband found in eight-man dormitory-style room); Santiago v. Nash, 224 F. App'x. 175, 177 (3d Cir. 2007) (holding "some evidence" rule may be satisfied by application of the constructive possession doctrine where a "small number" of inmates are potentially guilty of the offense charged); Reynolds v. Williamson, 197 F. App'x. 196, 199 (3d Cir. 2006) (applying doctrine of constructive possession where only two people were assigned to cell in which sharpened rod was found inside sink drain); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992) (applying doctrine of constructive possession where weapons found in air vent of cell shared by four inmates; 25% probability that sanctioned prisoner was responsible for weapon is sufficient to satisfy the "some evidence" standard); Donahue v. Grondolsky, Civil No. 08–5533, 2009 WL 3754045, *5–6 (D.N.J. Nov. 2, 2009), *aff'd*, No. 10–1147, 2010 WL 3529301 (3d Cir. Sept. 13, 2010) (where prisoner argued he was "set up," constructive possession doctrine is not unreliable where inmate shared cell with three other inmates, cell had been searched earlier the same day, and contraband was found in unlocked cell to which

7

140 inmates had access); Bailey v. Nash, Civil No. 04–1632, 2005 WL 2300367, *1, *3 (M.D.Pa. Sept. 21, 2005) (contraband found in bunk bed shared by two inmates in dormitory-style area housing six to ten inmates).

Walter Brown #17172-171, one of petitioner's cellmate, also charged in the incident, filed a petition for writ of habeas corpus challenging the DHO's finding of guilty based on the application of the constructive possession doctrine. Brown v. Rectenwald, 1:CV-12-1135. In considering Brown's argument, the Honorable Sylvia H. Rambo opined as follows:

> In the instant case, the DHO specifically noted that he considered the incident report and investigation, as well as Brown's own statement. (Doc. 6–1 at 19–21.) The DHO credited the reporting officer's account of the incident over Brown's, and found the charge to be supported based on the greater weight of evidence cited in the report. (Id. at 20.) Further, the DHO found that no inmate assigned to the cell claimed responsibility for the weapon during the disciplinary process, a process which places equal responsibility with all inmates assigned to the cell. (Id.) Brown also claims that the investigating officer failed to inform the DHO that one of his cellmates had, in fact, allegedly accepted responsibility for the weapon. (Doc. 1 at 2.) However, Brown also avers that this inmate recanted his statement. (Id.) Thus, in light of the evidence presented to the DHO, who made a credibility determination as to guilt, and pursuant to the doctrine of constructive possession, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation, as well as the DHO's acknowledgment that "[n]o inmate assigned to the cell claimed responsibility for the weapon throughout the disciplinary process which places equal responsibility with all inmates assigned to the cell," (Doc. 6–1 at 20), confirm that the DHO acted with a sound evidentiary basis. Hill, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Brown's claim that there was insufficient evidence to support the DHO's decision.

Brown v. Rectenwald, 1:CV-12-1135, 2013 WL 228704 *3 (M.D. Pa. Jan. 22, 2013)

In considering the evidence, as recited in section "I. Background," *supra*, the court echoes the finding of Judge Rambo that the DHO acted with a sound evidentiary basis. Hill,

472 U.S. at 455-56.) The DHO credited the reporting officer's account of the incident over petitioner's and found the charge to be supported based on the greater weight of evidence cited in the report. (Doc. 7-1, at 25.) "No inmate assigned to the cell claimed responsibility for the weapon throughout the disciplinary process which places equal responsibility with all inmates assigned to the cell." (Id.) Consequently, the petition will be denied with respect to the claim that there was insufficient evidence to support a finding of guilt.

III. **Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: October 22, 2013